## LYDIA GIBBS ET AL. *v.* R. E. DORTCH.

1. TAX TITLE. *Certificate to list of lands. Name of collector only in body thereof.*
   A tax collector's certificate to a list of lands sold to the State, made under § 40 of the Revenue Act of 1878, which provides that such "list shall be certified under his hand to be correct," is not defective because the name of the collector is not subscribed thereto but appears only in the body thereof, as "I, F. M., sheriff and tax collector of" a certain named county, " do hereby certify," etc.

2. SAME. *Certificate to list of lands. Written by deputy instead of by collector.*
   And the fact of such certificate having been written by a deputy instead of by the tax collector himself does not render it void, if it was written under the direction of the collector and as his act.

3. SAME. *Defective certificate to assessment roll. Effect under Revenue Act, 1878.*
   Section 27 of the Revenue Act of 1878, after providing for the examination and correction of the assessment roll by the board of supervisors of each county, provided further that "if said board shall receive and approve such assessment the clerk shall make two fair copies of the roll as examined and corrected," and on or before the first day of October shall deliver one copy to the tax collector and transmit the other to the auditor of public accounts. No defect or irregularity in (nor even the entire absence of) such certificate to the copy of the assessment roll delivered to the tax collector was sufficient to invalidate a sale for taxes due and unpaid, made at the proper time and place, upon a valid assessment, and protected by § 42 of the Revenue Act of 1878, to the effect that no defense shall be available against the title conferred by such sale, "except by proof that the taxes for which the land was sold had been paid or tendered to the proper officer before sale."

APPEAL from the Chancery Court of Hinds County.

HON. E. G. PEYTON, Chancellor.

On the 2d day of February, 1883, the bill in this case was filed by R. E. Dortch against Lydia Gibbs and others to confirm complainant's title to a certain tract of land which he bought from the State on the 2d of March, 1881, and which had been sold to the State on the 1st of March, 1880, for the taxes of 1879 due thereon. The defendants attacked the complainant's title on the grounds (1) that the assessment roll upon which the land was sold by the tax collector was not properly certified by the clerk of the board of supervisors, and (2) that the list of lands sold to the State on the 1st of March, 1880, for taxes, was not properly certified to by the tax collector. The facts relating to the clerk's certificate to the assessment roll are stated in the opinion of the court. The certificate to the list of lands was in the following language :

" STATE OF MISSISSIPPI, }
     HINDS COUNTY. }

"I, Farrar Morrison, sheriff and tax collector in and for said county, do hereby certify that the following is a correct list of lands sold to the State of Mississippi on the first Monday in March, 1880, for delinquent taxes due thereon for the fiscal year 1879, pursuant to the requirements of law."

This certificate had no signature to it and was entirely in the handwriting of L. F. Chiles, a deputy of Morrison, the sheriff and tax collector, but was written by the direction of said Farrar Morrison as sheriff and tax collector, and as the act and deed of said Morrison.

The court below rendered a decree granting the relief prayed for by the complainant and the defendants appealed to this court.

*Wells & Williamson,* for the appellants.

1. We first call attention to the defects in the certificate to the assessment roll.

(1). There was no pretended certificate during the whole time within which taxes could be paid without damage, see Acts 78, p. 40, § 32, the time damages were to be added being December 15th.

It is held in *Virden* v. *Bowers*, 55 Miss. 20, that this assessment roll is in its nature an *execution*, and arms the tax collector with authority to collect taxes ; and so also in *State* v. *Harris*, 52 Miss. 693. This *fieri facias*, if it had been certified on the 1st of October, 1879, would have had for its return day, so far as the taxes are concerned without damage, the 15th of December, 1879. The taxpayer, going to the court-house at any time between the 1st of October and 15th of December, 1879, would have found that the sheriff was utterly without any authority to collect the taxes for that year.

See in this connection Blackwell on Tax-Titles, marginal, 167, 168, and 169 ; *Kelley* v. *Craig*, 5 Iredell N. C. Repts. 129 ; *Chase* v. *Sparhawk*, 2 New Hampshire 139 ; *Gamble* v. *Witty*, 55 Miss. 35 ; *Davis* v. *Vanarsdale*, 59 Miss. 369 ; *Fletcher* v. *Trewalla*, 60 Miss. 964 ; *Caruthers* v. *McLaran*, 56 Miss. 378.

(2). This roll does not purport to be a copy of a roll which *was corrected* and *approved* by the board of supervisors, but of the *roll filed 21st of July*, 1879, *by the assessor*. That was not a judgment of a court, but was simply a document in the nature of a declaration upon which the board of supervisors could act and levy a tax. The tax was not levied on lands as contained in this roll, but on the roll amended and approved by them, if such was actually done. The authorities above cited all refer to the *approved* roll, a copy of which arms the sheriff with authority to collect the taxes.

(3). Again, the clerk says that at the time the roll was made it was a copy of the one filed by the assessor. He does not say that at that time, January 3, 1880, it was a copy, but when it was made it was a copy. It may have a hundred changes in it since that, and yet this certificate does not show it.

2. We hold that no title passed to the State by virtue of the list of lands introduced in evidence in this cause.

This list is not signed by any one, neither by the sheriff nor Chiles, his deputy. This list is the *deed* which conveys the land from the individual to the State. *Gamble* v. *Witty*, 55 Miss. 26 ; *Clymer* v. *Cameron*, 55 Miss. 593 ; *Vaughan* v. *Swayzie*, 56 Miss.

707 ; *Mayson.* v. *Banks,* 59 Miss. 449 ; *Weathersby* v. *Thoma,* 57 Miss. 297 ; *French* v. *Ladd,* 57 Miss. 679.

We think our view of this matter, to wit, that this list, which is, in fact, a deed, must be signed by the sheriff, is well settled in the above cases, especially the case of *Mayson* v. *Banks,* 59 Miss.

*Nugent & McWillie,* for the appellee.

1. The appendage of a certificate by the clerk to the copy of the assessment roll delivered to the tax collector is merely directory under our system, and is not essential to the validity of a sale for taxes. The case of *Virden* v. *Bowers,* 55 Miss. 20, most relied on by appellants, holds simply that the collector must have " the assessment roll or a copy," not a certified copy, but that which is in truth and in fact an exemplification of the roll submitted to and approved by the board and in connection with the levy constituting a charge upon the land. In the case of *Chesnut* v. *Elliott,* 61 Miss. 572, this court said, in respect to the affidavit required of assessors to their rolls : " It was admonitory to him as well as a guide to the board of supervisors as to what was required of him. There is nothing to suggest a purpose in the legislature to make the required affidavit a condition of the validity of the assessment or essential to the jurisdiction of the board of supervisors to deal with the rolls as the law directs. *On the contrary, we think the manifest purpose of the legislature was to make all such requirements as this directory and not mandatory in the sense that failure to observe them will annul subsequent proceedings.*" *Vide* also *Nevin* v. *Bailey,* MS. opinion Cooper, J., and § 42, Acts 1878, p. 47.

2. We do not dispute, and have never disputed, that the sales list of tax collectors must be officially certified. Our position is that the list in question here was so certified. The record shows that it was made out entirely in the handwriting of L. F. Chiles, who was the deputy in charge of the office for the first district of Hinds County, and that the caption constituting the certificate in which appeared the name of the collector was written by this deputy by the authority and at the direction of the collector.

We insist that under the statute the list offered in evidence was sufficient. It was certified and *under the hand of the collector.* The

statute did not require the collector to put his signature in any particular place or part of the list, and no place was more appropriate than the body of the certificate itself. The language found in 2 Kent's Commentaries, at *p. 511, puts the matter at rest, unless the collector is not bound by the act of Chiles in putting his name into the body of the certificate. We apprehend that, under the circumstances, the act was that of the collector to all intents and purposes. See *Gardner* v. *Gardner*, 52 Am. Dec. 740.

CAMPBELL, C. J., delivered the opinion of the court.

The list of land sold to the State for taxes was not defective and insufficient because the name of the tax collector was in the body of the certificate and not at the end of it. All that the statute requires is a certified list of the lands struck off by the tax collector to the State, etc. It must be certified by the tax collector, but whether his name appears in the beginning or at the end of the certified list is not material.

Although the list was made out by a deputy it is shown to have been the act of the principal, and as effective as if done by him in person.

The assessment roll of lands was copied by the clerk and a copy delivered to the tax collector before the first of October, 1879, but the clerk failed to append to the copy delivered to him a certificate that it was a true copy, and on the 3d of January, 1880, the clerk affixed to the copy of the roll in the hands of the collector a certificate that it is " a true copy of the original land roll as the same was filed and sworn to by the assessor," and the contention is that the collector had no power to collect by virtue of a roll thus certified.

By section 42 of " An act in relation to the public revenue," approved March 5, 1878, and in force when this sale was made, it it provided, with reference to the conveyance of lands sold for taxes to individuals and the list of those sold to the State, that " No such conveyance or list   *   *   *   shall be invalidated, nor shall any defense be available against the title thus conveyed in any court of this State except by proof that the taxes for which said lands were

sold had been paid or tendered to the proper officer before sale,"
etc. If there was an assessment and taxes were due and not paid
and land was sold for them, the title vested in an individual or the
State by the conveyance or list made by the collector, as prescribed
by the statute, is unassailable. This is the effect of the statute
referred to. There being an assessment and levy of taxes, a charge
was thereby imposed on the property. The law directed a sale to
meet this charge if there was a failure to pay the amount due by a
fixed time. The time and place of sale were prescribed by law,
and the collector was required to make conveyances to individuals
and a list of lands struck off to the State for taxes, and the effect of
such conveyances and list was declared to be to vest a title assaila-
ble only by proof of payment of taxes due.

As we have heretofore said, the State cannot sell the property
of the individual who is not in default as to taxes. There must be
taxes due and unpaid to give rise to the power to sell for taxes, but
when this power exists and is exercised in the manner prescribed
by law it is a legitimate exercise of power by the legislature to
preclude the delinquent owner of the property sold from attacking
the sale because of some mere irregularity incident to the proceed-
ings resulting in a sale. An examination of the several decisions
of this court will show a careful observance of this distinction.
There must be an assessment. The constitution requires it, and
the legislature cannot dispense with that, although it is to deter-
mine how the required assessment shall be made. Taxes must be
levied or else they cannot be due and unpaid. Without the con-
currence of these things there cannot be a lawful sale of property
for taxes, but if there is such concurrence, and the power of sale
conferred by law is exercised by the person authorized at the time
and place and in the mode prescribed by law, the owner may not
afterward complain that the list or assessment roll in the hands of
the collector was not properly certified by the clerk whose duty it
was to certify it. The assessment fixed the charge on the property.
The taxes were duly imposed. The law designated the officer to
collect the taxes, and for convenience directed that he should be
furnished with a certified copy of the assessment, the original of

which was to remain in the clerk's office. The law fixed the time against which the taxes then charged should be paid, in default of which the collector was required to sell land at a time and place and in a manner designated, and conveyances were to be made of lands bid off by individuals and a list of those struck off to the State, and such conveyances and list are declared to be unassailable except by proof of prepayment or tender of the taxes due. There is in this case no proof of such prepayment, but an assailment of the title conveyed by the sale by evidence that the assessment roll in the hands of the collector was not properly certified by the clerk. This made no difference after the sale, because of the express declaration of the law by virtue of which the sale was made.

The only way to invalidate a sale under such a law is to prove that taxes were not due and unpaid or that the rights of the owner were disregarded by a sale not in pursuance of the law on that subject. The legislature intended after a sale to cut off all inquiry into mere irregularities as to matters preceding it.

*Affirmed.*